### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **URBAN OAKS BUILDERS LLC,** | § | **Case No. 18-34892** |
| | § | |
| **Debtor.** | § | **Chapter 11** |

### CHAPTER 11 PLAN OF REORGANIZATION OF URBAN OAKS BUILDERS LLC

Matthew S. Okin
Texas Bar No. 00784695
David L. Curry, Jr.
Texas Bar No. 24065107
Ryan A. O'Connor
Texas Bar No. 24098190
**OKIN ADAMS LLP**
1113 Vine St., Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 888.865.2118
Email: mokin@okinadams.com
Email: dcurry@okinadams.com
Email: roconnor@okinadams.com

**ATTORNEYS FOR THE DEBTOR**

Dated:  February 26, 2019

# TABLE OF CONTENTS

Page

ARTICLE I.  DEFINED TERMS, RULES OF INTERPRETATION, CONSTRUCTION OF
TERMS, COMPUTATION OF TIME, AND GOVERNING LAW ..............................................1
    A. Defined Terms ...........................................................................................................1
    B. Rules of Interpretation and Construction of Terms ...................................................10
    C. Computation of Time ..................................................................................................10
    D. Governing Law ..........................................................................................................11
    E. Reference to Monetary Figures ..................................................................................11
    F. Incorporation of Documents by Reference ................................................................11

ARTICLE II.  ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS............................11
    A. Administrative Claims ...............................................................................................11
    B. DIP Loan Claim ........................................................................................................12
    C. Professional Compensation Claims ...........................................................................12
    D. Priority Unsecured Tax Claims ..................................................................................13

ARTICLE III.  CLASSIFCATION AND TREATMENT OF CLAIMS AND INTERESTS.....13
    A. Classification in General ...........................................................................................13
    B. Summary of Classification of Claims and Interests ...................................................14
    C. Treatment of Claims and Interests .............................................................................14
    D. Special Provision Governing Unimpaired Claims ......................................................16
    E. Elimination of Vacant Classes ...................................................................................16
    F. No Voting Classes ......................................................................................................16
    G. Controversy Concerning Impairment.........................................................................16
    H. Subordinated Claims .................................................................................................16
    I. No Waiver ...................................................................................................................16

ARTICLE IV.  MEANS FOR IMPLEMENTATION OF THE PLAN ....................................17
    A. Corporate Existence ..................................................................................................17
    B. Reorganized Debtor ...................................................................................................17
    C. Directors and Officers of the Reorganized Debtor .....................................................17
    D. Vesting of Assets in Reorganized Debtor ..................................................................17
    E. Establishment of the UOB Insurance Trust................................................................18
    F. Appointment of Insurance Trustee .............................................................................18
    G. Vesting and Transfer of Insurance Trust Assets to the UOB Insurance Trust.............18
    H. Insurance Trust Expenses ..........................................................................................19
    I. Beneficiaries of the Insurance Trust............................................................................19
    J. Preservation of Right to Conduct Investigations .........................................................19
    K. Federal Income Tax Treatment of Insurance Trust for the Insurance Trust Assets......19
    L. Termination of the Insurance Trust.............................................................................19
    M. Corporate Action of the Debtor ................................................................................20
    N. Effectuating Documents; Further Transactions..........................................................20
    O. Retained Causes of Action ........................................................................................20

ARTICLE V.  TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED LEASES ....21
    A. Assumption and Rejection of Executory Contracts and Unexpired Leases .................21
    B. Indemnification Obligations ......................................................................................21
    C. Claims Based on Rejection of Executory Contracts or Unexpired Leases...................21

D. Cure of Defaults for Executory Contracts and Unexpired Leases Assumed ................22
E. Preexisting Obligations to the Debtor under Executory Contracts and Unexpired Leases
.................................................................................................................................22
F. Modifications, Amendments, Supplements, Restatements, or Other Agreements .........23
G. Reservation of Rights ...................................................................................................23
H. Nonoccurrence of Effective Date ................................................................................23
I. Contracts and Leases Entered Into After the Petition Date...........................................23

ARTICLE VI.  PROVISIONS GOVERNING DISTRIBUTIONS  ............................................ 23
A. Timing and Calculation of Distributions .....................................................................23
B. Rights and Powers of Reorganized Debtor to Make Distributions...............................24
C. Delivery of Distributions and Undeliverable or Unclaimed Distributions ...................24
D. Manner of Payment .....................................................................................................25
E. Distributions to Holders of Disputed Claims ...............................................................25
F. Compliance with Tax Requirements ............................................................................25
G. Allocations ..................................................................................................................26
H. No Post-Petition Interest on Claims ............................................................................26
I. Foreign Currency Exchange Rate .................................................................................26
J. Setoffs and Recoupment ..............................................................................................26
K. Claims Paid or Payable by Third Parties  ....................................................................27

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND
DISPUTED CLAIMS  ............................................................................................................... 28
A. Claims Administration Responsibilities  .....................................................................28
B. Estimation of Claims and Interests ..............................................................................28
C. Adjustment to Claims or Interests Without Objection ..................................................29
D. Time to File Objections to Claims ...............................................................................29
E. Disallowance of Claims or Interests .............................................................................29
F. Amendments to Claims or Interests ..............................................................................29
G. No Distributions Pending Allowance ..........................................................................30
H. Distributions After Allowance  ....................................................................................30

ARTICLE VIII.  SETTLEMENT, RELEASE, INJUNCTION & RELATED PROVISIONS .... 30
A. Release of Debtor  .......................................................................................................30
B. Release of Liens ...........................................................................................................30
C. Releases by the Debtor.................................................................................................31
D. Releases by Holders of Claims and Interests ...............................................................31
E. Exculpation..................................................................................................................32
F. Injunction.....................................................................................................................32
G. Channeling Injunction .................................................................................................33
H. Protections Against Discriminatory Treatment ............................................................33
I. Reimbursement or Contribution  ..................................................................................33

ARTICLE IX.  CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION
OF THE PLAN ...................................................................................................................34
A. Conditions Precedent to Confirmation ........................................................................34
B. Conditions Precedent to Effectiveness.........................................................................34
C. Waiver of Conditions ...................................................................................................34
D. Effect of Failure of Conditions ...................................................................................34

ARTICLE X.  MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ........35
    A. Modifications and Amendments ..................................................................35
    B. Effect of Confirmation on Modifications.....................................................35
    C. Revocation or Withdrawal of Plan ..............................................................35

ARTICLE XI. RETENTION OF JURISDICTION....................................................35

ARTICLE XII.  MISCELLANEOUS PROVISIONS  ...............................................37
    A. Immediate Binding Effect  ..........................................................................37
    B. Additional Documents .................................................................................38
    C. Payment of Statutory Fees ...........................................................................38
    D. Reservation of Rights .................................................................................38
    E. Successors & Assigns...................................................................................38
    F. Notices..........................................................................................................38
    G. Term of Injunction or Stays.........................................................................39
    H. Entire Agreement ........................................................................................39
    I. Exhibits.........................................................................................................39
    J. Nonseverability of Plan Provisions ..............................................................39
    K. Plan Proposed in Good Faith.......................................................................40
    L. Closing the Bankruptcy Case .......................................................................40
    M. Waiver or Estoppel  ....................................................................................40
    N. Controlling Document ..................................................................................40

## INTRODUCTION

Urban Oaks Builders LLC, as Debtor and Debtor-in-Possession in the above captioned Bankruptcy Case, hereby proposes this Plan of reorganization under Bankruptcy Code section 1121 for the resolution of outstanding Claims against, and Interests in, the Debtor.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, CONSTRUCTION OF TERMS, COMPUTATION OF TIME, AND GOVERNING LAW

### A.     Defined Terms

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have meanings ascribed to them in this Article.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

*Administrative Claim* or *Administrative Expense Claims* means a Claim, Cause of Action, right, or other liability, or the portion thereof, that is entitled to priority under Bankruptcy Code sections 326, 327, 330, 503(b), 506(c), 507(a)(2), 507(b), and 1103, including (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and/or in connection with operating the Debtor's business (such as wages, salaries, or payments for goods and services); (ii) Professional Compensation Claims; and (iii) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

*Administrative Claim Bar Date* means, except as provided in Article II herein, the first Business Day that is thirty (30) days after the Effective Date or such earlier deadline as established by an order of the Bankruptcy Court.

*Affiliate* has the meaning prescribed in Bankruptcy Code section 101(2).

*Allowed* means, with respect to any Claim or Interest, except as otherwise provided in the Plan, a Claim or Interest allowable under Bankruptcy Code section 502 that (i) has been allowed by a Final Order, including but not limited to any Final Order estimating claims for purposes of confirming this Plan, (ii) either has been Scheduled as a liquidated, non-contingent, undisputed Claim in an amount greater than zero in the Debtor's Schedules, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy Court, or is the subject of a timely Filed and liquidated Proof of Claim as to which either no objection to its allowance has been Filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court, or any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or (iii) is expressly allowed in a liquidated amount in the Plan; provided, however that with respect to an Administrative Claim, "Allowed" means an Administrative Claim as to which a timely request for payment has been made in accordance with this Plan (if such written request is required) or other Administrative

1

Claim, in each case as to which (i) a timely objection has not been Filed, or (ii) a timely objection is Filed and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order.

***Avoidance Actions*** means any and all actual or potential Claims and Causes of Action that may be commenced before or after the Effective Date, to avoid a transfer of property or an obligation incurred by any of the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law.

***Bankruptcy Case*** means the Chapter 11 bankruptcy case commenced by the Debtor upon the Filing of the voluntary petition on the Petition Date; styled *In re Urban Oaks Builders LLC,* Case No. 18-34892-11.

***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

***Bankruptcy Estate*** or ***Estate*** means the estate of the Debtor created under section 541 of the Bankruptcy Code upon the Filing of the Bankruptcy Case.

***Bankruptcy Rules*** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and as applicable to the Bankruptcy Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Bankruptcy Case or proceedings therein, as the case may be.

***Bar Date*** means January 23, 2019, the date established by the Bankruptcy Court by which Proofs of Claim must be Filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims or Interests for which the Bankruptcy Court entered an order excluding Holders of such Claims or Interests from the requirement of Filing Proofs of Claim.

***Business Day*** means any day other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

***Cash*** means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

***Causes of Action*** means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) Avoidance Actions; and (d) such claims and defenses

2

as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

***Celebration Apartments*** means the multifamily apartment project the Debtor was the general contractor for in Celebration, Florida.

***CIPs*** means the Debtor's contractor-controlled insurance plans.

***Claim*** means a claim against any portion of the Debtor's Bankruptcy Estate, whether or not asserted, as defined in section 105(5) of the Bankruptcy Code.

***Claims Register*** means the official register of Claims.

***Class*** means a category of Claims or Interests as described in the Plan pursuant to Bankruptcy Code section 1122(a).

***CM/ECF*** means the Bankruptcy Court's Case Management and Electronic Case Filing system.

***Confirmation*** means entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

***Confirmation Date*** means the date of entry by the Bankruptcy Court of the Confirmation Order.

***Confirmation Hearing*** means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan.

***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code § 1129.

***Consummation*** means the occurrence of the Effective Date.

***Coverage Litigation*** means the litigation initiated by the Debtor against the Insurance Carriers seeking a declaratory judgment requiring them to honor their obligations to the Debtor in relation to the Southstar Litigation.   The Coverage Litigation is styled *Hines Interests Limited Partnership, et. al. v. Southstar Capital Group I, LLC, et. al.*, Case No. 6:18-CV-1147-ORL-22DCI in the United States District Court for the Middle District of Florida.

***Cure Claim*** means a Claim based upon the Debtor's default on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor pursuant to Bankruptcy Code section 365.

***Cure Claim Submission Deadline*** means [_____], 2019, the date by which all alleged amounts accrued or alleged defaults through the Effective Date must be Filed with the Bankruptcy Court.

***Current Directors and Officers*** means the directors and officers of the Debtor who were directors and officers of the Debtor as of the Petition Date.

***Debtor*** means Urban Oaks Builders LLC.

***DIP Lender*** means POC Holdings 2, Inc.

3

**DIP Loan Agreement** means the Debtor in Possession Secured Promissory Note between the Debtor and the DIP Lender [Doc. No. 8-1], including any subsequent amendments thereto, and the corresponding Security Documents, as defined therein.

**DIP Loan Claim** means a Claim held by the DIP Lender, arising under or relating to the DIP Loan Agreement or the DIP Loan Order, including any and all fees, interest paid in kind, and accrued but unpaid interest and fees arising under the DIP Loan Agreement, and all obligations defined thereunder.

**DIP Loan Order** means the *Final Order (I) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507, Bankruptcy Rules 2002, 4001 and 9014 Authorizing the Debtor to (A) Obtain Postpetition Financing, (B) Grant Senior Liens and Superpriority Administrative Expense Status, (C) Use Cash Collateral of Prepetition Secured Lender, and (D) Grant Adequate Protection to Prepetition Secured Lender; and (II) Granting Related Relief* [Doc. No. 104].

**Disputed Claim** means a Claim in a particular Class as to which a Proof of Claim has been Filed or is deemed to have been Filed under applicable law or an Administrative Claim as to which an objection has been Filed in accordance with the Plan, the Bankruptcy Code or the Bankruptcy Rules, and such objection has not been withdrawn or determined by a Final Order. For purposes of the Plan, a Claim is a Disputed Claim prior to any objection to the extent that (a) the amount of a Claim specified in a Proof of Claim exceeds the amount of any corresponding Claim scheduled by the Debtor in the Schedules of Assets and Liabilities; (b) any corresponding Claim scheduled by the Debtor in the Schedules of Assets and Liabilities has been scheduled as disputed, contingent or unliquidated, irrespective of the amount scheduled; (c) no corresponding Claim has been scheduled by the Debtor in the Schedules of Assets and Liabilities; or (d) the Claim is subject to disallowance pursuant to Bankruptcy Code section 502(d).

**Distribution Record Date** means the Confirmation Date.

**Effective Date** means the date that is the first Business Day after the Confirmation Date, on which (a) no stay of the Confirmation Order is in effect, and (b) all conditions to the effectiveness of the Plan have been satisfied or waived as provided in the Plan.

**Entity** means any Person, estate, trust, Governmental Unit, or United States trustee, as set forth in Bankruptcy Code section 101(15).

**Estate Property** means all right, title, and interest in and to any and all property of every kind or nature, owned by the Debtor or its Estate on the Petition Date as defined by Bankruptcy Code section 541.

**Estate** means the bankruptcy estate of the Debtor and all Estate Property comprising the Debtor's bankruptcy estate within the meaning of Bankruptcy Code section 541.

**Exculpated Parties** means, collectively, the Debtor and POC Holdings 2, Inc., and with respect to each of the foregoing Entities, any of their respective current officers, directors, Professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents and other representatives (but solely in their capacity as such).

***Executory Contract*** means an executory contract or unexpired lease as such terms are used in Bankruptcy Code section 365, including all operating leases, capital leases, and contracts to which any Debtor is a party or beneficiary.

***Exhibit*** means an exhibit annexed to the Plan.

***Exit Financing*** means the new financing provided to the Debtor by POC Holdings 2, Inc. upon the Effective Date of the Plan.

***Exit Financing Documents*** means the credit agreement and other loan documents related to or evidencing the loans and obligations thereunder, to be dated as of the Effective Date, governing the Exit Financing, each in form and substance acceptable to the Debtor and POC Holdings 2, Inc.

***File***, ***Filed***, or ***Filing*** means, as to any document or pleading, properly and timely file, filed or filing with the Bankruptcy Court or its authorized designee in the Bankruptcy Case.

***Final Order*** means an order or judgment of the Bankruptcy Court, as entered on the docket in the Debtor's Bankruptcy Case, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was Filed or, if Filed, remains pending.

***Gemini*** means Gemini Insurance Company.

***General Unsecured Claim*** means an Unsecured Claim that is not: (a) an Administrative Claim; (b) a Professional Compensation Claim; (c) a Priority Tax Claim; (d) a Priority Non-Tax Claim; (e) a Litigation Creditor Claim; or (f) a Non-Southstar Warranty Claim.

***Governmental Unit*** means any governmental unit, as defined in Bankruptcy Code section 101(27).

***Great American*** means Great American Assurance Company.

***Holder*** means (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim Filed with respect to such Claim, or (ii) if no Proof of Claim has been Filed with respect to such Claim, the owner or holder of such Claim as such is reflected on the Schedules or the books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has assigned or transferred the Claim to a third party and the Debtor have received sufficient written evidence of such assignment or transfer, the assignee or transferee; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as shown on the stock register that is maintained by the Debtor or as otherwise determined by order of the Bankruptcy Court.

***Impaired*** or ***Impairment*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code section 1124.

***Inception CIP*** means that certain CIP which acts as a single policy to provide coverage for the Debtor and the Other Defendants for their work at the Celebration Apartments. This term

specifically includes the Debtor's insurance policies with Gemini, Ironshore, Navigators, and Great American.

*Insider* has the meaning set forth in Bankruptcy Code section 101(31).

*Insurance Carriers* means, collectively, Gemini, Ironshore, Navigators, and Great American.

*Insurance Proceeds* means the proceeds of the Debtor's insurance policies with Gemini, Ironshore, Navigators, and Great American pursuant to the Inception CIP.

*Insurance Reimbursement Claim* means the Debtor's claims against, and interest in, the Insurance Proceeds under the Insurance Trust for reimbursement of actual expenses incurred for remediation work at the Celebration Apartments prior to the Petition Date. The Insurance Reimbursement Claim amount is fixed at $[_____].

*Insurance Trust* or *UOB Insurance Trust* means the trust established under the Plan pursuant to the Insurance Trust Agreement. With respect to any action required or permitted to be taken by the Insurance Trust, the term includes the Insurance Trustee, or any other person authorized to take such action in accordance with the Insurance Trust Agreement.

*Insurance Trust Agreement* means the agreement creating the Insurance Trust to be implemented pursuant to Article IV of the Plan, which terms are consistent with the terms of the Plan. To the extent the Insurance Trust Agreement is not filed with the Plan, it will be filed in the Bankruptcy Case prior to the Confirmation Hearing.

*Insurance Trust Assets* means the assets transferred to the UOB Insurance Trust pursuant to the terms of this Plan and the Insurance Trust Agreement. This term specifically includes the Debtor's claims against and interest in, the Insurance Proceeds under the Inception CIP as a result of the claims asserted and potential for liability in the Southstar Litigation. For the avoidance of doubt, this term specifically excludes all other right, interests, or claims of the Debtor's Estate that could be asserted pursuant to any other insurance policy, CIP, or Subcontractor Default Insurance Policy.

*Insurance Trustee* means the trustee of the UOB Insurance Trust after his or her appointment pursuant to the Plan and the Insurance Trust Agreement.

*Interest*, *Equity Interest*, or *Membership Interest* means any ownership interest in the Debtor, as of the Petition Date, including, but not limited to, an interest in any issued, unissued, authorized or outstanding shares or stock, including ordinary shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Debtor, whether or not transferable, together with any warrants, options, or contractual rights to purchase or acquire such interests at any time and all rights arising with respect thereto.

*Interim DIP Loan Order* means the *Interim Order: (I) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507, Bankruptcy Rules 2002, 4001 and 9014 Authorizing the Debtor to (A) Obtain Postpetition Financing, (B) Grant Senior Liens and Superpriority Administrative Expense Status, (C) Use Cash Collateral of Prepetition Secured Lender, and (D) Grant Adequate Protection to Prepetition Secured Lender; (II) Scheduling a Final Hearing; and (III) Granting Related Relief* [Doc. No. 26].

6

*Ironshore* means Ironshore Specialty Insurance Company.

*IRS* means the Internal Revenue Service.

*Judicial Code* means title 28 of the United States Code, 28 U.S.C. §§ 1 – 4001.

*Lien* means a lien, security interest, or other interest or encumbrance asserted against any Estate Property as defined in Bankruptcy Code section 101(37).

*Litigation Creditor* means a Person or Entity holding a Claim against the Debtor's Estate which could be satisfied by the Gemini, Ironshore, Navigators, and Great American insurance policies under the Inception CIP, including, but not limited to, the Southstar Plaintiffs and the Other Defendants.

*Navigators* means Navigators Specialty Insurance Company.

*Non-Southstar Warranty Claim* means a Claim against the Debtor's Estate, other than the Claims of the Southstar Plaintiffs, for warranty work at one or more of the Debtor's construction projects, whether ongoing or previously completed, and regardless of which of the Debtor's CIPs may provide coverage.

*Other Defendants* means 1662 Multifamily LLC, Hines Investment Management Holdings Limited Partnership, HIMH GP LLC, Hines Real Estate Holdings Limited Partnership, Hines Interests Limited Partnership, and JCH Investments, Inc.

*Other Defendants' Claims* means the Proofs of Claim filed by the Other Defendants against the Debtor for contribution and/or indemnity if, and to the extent the Other Defendants may be held liable to the Southstar Plaintiffs in the Southstar Litigation.

*Person* means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, regardless of whether they are governments, agencies, or political subdivisions thereof.

*Petition Date* means August 31, 2018, the date on which the Debtor commenced the Bankruptcy Case.

*Plan* means the Chapter 11 Plan of Reorganization Filed by the Debtor, as such document may be amended or modified.

*Plan Documents* means, collectively those documents in furtherance of Consummation of the Plan and/or to be executed in order to consummate the transactions contemplated under the Plan, which may be Filed by the Debtor with the Bankruptcy Court.

*Prepetition Secured Loan* means the funds advanced to the Debtor pursuant that certain Security Agreement dated August 21, 2018, and Promissory Note dated August 21, 2018, by and between the Debtor and POC Holdings 2, Inc.

***Priority Non-Tax Claim*** means a Claim asserted under Bankruptcy Code sections 507(a)(3-7 and 9-10).

***Priority Tax Claim*** means a Claim asserted under Bankruptcy Code section 507(a)(8).

***Professional*** means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

***Professional Compensation Claim*** means a Claim for compensation or reimbursement of expenses of a Professional incurred on and after the Petition Date and prior to the Effective Date, including fees and expenses incurred in preparing final fee applications and participating in hearings on such applications, and requested in accordance with the provisions of Bankruptcy Code sections 326, 327, 328, 330, 331, 502(b) or 1103.

***Professional Compensation Claim Bar Date*** means, except as provided in Article II herein, forty-five (45) days after the Effective Date.

***Professional Compensation Claim Objection Deadline*** means twenty-one (21) days after the Professional Compensation Claim Bar Date.

***Proponent*** means the Debtor.

***Proof of Claim*** means a proof of Claim Filed against the Debtor in the Bankruptcy Case by the applicable Bar Date.

***Reinstate***, ***Reinstated***, or ***Reinstatement*** means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with Bankruptcy Code section 1124.

***Released Party*** means, collectively, and in each solely in their capacities as such, the Debtor, and with respect to the Debtor, its Professionals, successors, assigns, subsidiaries, Affiliates, managed accounts and funds, Current Directors and Officers, principals, shareholders, members, partners, managers, employees, subcontractors, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Entities' respective heirs, executors, estates, servants, and nominees.

***Releasing Party*** means the Holders of Claims or Interests in Classes 1, 2, 3, 4, and 5 that are entitled to receive distributions under the Plan.

***Reorganized Debtor*** means, collectively, the Debtor, or any successors or assigns, by merger, consolidation, or otherwise, on and after the Effective Date.

***Retained Causes of Action*** means all Causes of Action that belong to the Debtor, but shall not include any action against a Released Party.

***Schedules*** means, collectively, the Schedule of Assets and Liabilities, Schedule of Equity Security Holders, Schedule of Rejected Contracts and Leases, and Schedule of Retained Causes of Action.

***Schedule of Assets and Liabilities*** means the schedules of assets and liabilities Filed by the Debtor in the Bankruptcy Case, as may be amended, modified, or supplemented.

***Schedule of Equity Security Holders*** means the schedule of Interests required to be Filed pursuant to Bankruptcy Rule 1007(a)(3).

***Schedule of Rejected Contracts and Leases*** means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtor, to be Filed as an Exhibit to the Plan.

***Schedule of Retained Causes of Action*** means the Retained Causes of Action set forth on the schedule to be Filed as an Exhibit to the Plan.

***Secured Claim*** means a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

***Secured Tax Claim*** means a Secured Claim for taxes held by a Governmental Unit, including cities, counties, school districts, and hospital districts, (a) entitled by statute to assess taxes based on the value or use of real and personal property and to obtain an encumbrance against such property to secure payment of such taxes or (b) entitled to obtain an encumbrance on property to secure payment of any tax claim specified in Bankruptcy Code section 507(a)(8).  Secured Tax Claims shall not include any such Claims secured by liens / security interests that are avoidable, unperfected, subject to subordination, or otherwise unenforceable.

***Securities Act*** means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local.

***Southstar Claims*** means the Southstar Plaintiffs' Claims against the Debtor's Estate in the Bankruptcy Case.

***Southstar Litigation*** means the litigation initiated by the Southstar Plaintiffs against the Debtor and Other Defendants related to the construction of the Celebration Apartments. The Southstar Litigation is styled *Southstar Capital Group I, LLC, et al. v. 1662 Multifamily, LLC et al.*, Case No. 2018-CA-415OC in the 9th Judicial Circuit for Osceola County, Florida.

***Southstar Plaintiffs*** means Southstar Capital Group I, LLC, Cottington Road TIC, LLC, and Durban Road TIC, LLC.

***Subcontractor Default Insurance Policies*** means the Debtor's insurance policies insuring against the risk of default of the Debtor's subcontractors.

***Subordinated Claim*** means a Claim that is subordinated to General Unsecured Claims pursuant to (a) a contract or agreement, (b) a Final Order declaring that such Claim is subordinated in right or payment, or (c) any applicable provision of the Bankruptcy Code, including Bankruptcy Code section 510, or other applicable law.  Subordinated Claims specifically include any Claim

for punitive damages provided for under applicable law.

***Unexpired Lease*** means a lease to which the Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

***Unimpaired*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of Bankruptcy Code section 1124.

***Unsecured Claim*** means a Claim that is not a Secured Claim and that is not entitled to priority under Bankruptcy Code section 507(a)(1-9).   The term specifically includes, pursuant to Bankruptcy Code section 506(a), any Claim of a creditor against the Debtor to the extent that such creditor's Claim is greater than the value of the Lien securing such Claim, any Claim for damages resulting from rejection of any Executory Contract or Unexpired Lease under Bankruptcy Code section 365, any tort Claims or contractual Claims or Claims arising from damage or harm to the environment and, and any Claim not otherwise classified under the Plan.

## B.    Rules of Interpretation and Construction of Terms

For purposes of this Plan: (1) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (2) any reference in this Plan to an existing document or Exhibit Filed or to be Filed means that document or Exhibit as it may have been or may be amended, supplemented, or otherwise modified; (3) unless otherwise specified, all references in this Plan to Sections or Articles are references to Sections or Articles of or to this Plan; (4) the words "herein," "hereto," "hereunder," and other words of similar import refer to this Plan in its entirety rather than to a particular portion of this Plan; (5) captions and headings contained in the Plan are inserted for convenience and reference only, and are not intended to be part of or to affect the interpretation of the Plan; (6) wherever appropriate from the context, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (7) any reference to an Entity as a Holder of a Claim or Interest includes the Entity's successors and assigns; (8) any reference to docket numbers of documents Filed in the Bankruptcy Case are references to docket numbers under the Bankruptcy Court's CM/ECF system; and (9) the rules of construction set forth in Bankruptcy Code section 102 and the Bankruptcy Rules shall apply.

## C.    Computation of Time

All times referenced in this Plan are prevailing Central Time.  In computing any period of time, date, or deadline prescribed or allowed in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  If the date on which a transaction may or must occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

**D.**     <u>**Governing Law**</u>

Subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules.

**E.**     <u>**Reference to Monetary Figures**</u>

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**F.**     <u>**Incorporation of Documents by Reference**</u>

This Plan incorporates by reference certain documents relating to the Debtor that are not presented herein or delivered herewith.  The documents that have been Filed in the Bankruptcy Case are incorporated by reference herein in their entirety, including all amendments thereto Filed prior to the date set for Confirmation, including the following documents: (a) the Debtor's Schedules of Assets and Liabilities [Doc. No. 68] and (b) the Statements of Financial Affairs, including exhibits [Doc. No. 69], filed on October 5, 2018.  Documents and pleadings Filed in the Bankruptcy Case are available at the following website: http://www.txsb.uscourts.gov.

**ARTICLE II.**
**ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS**

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Professional Compensation Claims, DIP Loan Claims, and Priority Tax Claims have not been classified for purposes of voting on, or receiving distributions under, the Plan, and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

**A.**     <u>**Administrative Claims**</u>

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Reorganized Debtor, each Holder of an Allowed Administrative Claim (other than Holders of Professional Compensation Claims, the DIP Loan Claim, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (i) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter; or (ii) if such Administrative claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter.  Notwithstanding anything contained in this Article, the Debtor shall, in accordance with the Bankruptcy Court's *Order Regarding Funds Held in Trust for the Benefit of Subcontractors and Other Vendors* [Doc. No. 27], continue paying its subcontractors and vendors in accordance with approved practices.  For the avoidance of doubt, to the extent a Holder of an Administrative Claim is not

being paid by the Debtor in the ordinary course, such Holder must File a request for payment of such Administrative Claim by the Administrative Claim Bar Date as set forth below.

Except for Professional Compensation Claims, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtor no later than the Administrative Claim Bar Date. Objections to such requests must be Filed and served on the Reorganized Debtor and the requesting party by the later of (i) thirty (30) days after the Effective Date or (ii) thirty (30) days after the Filing of the applicable request for payment of the Administrative Claims, if applicable. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with a Final Order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not File and serve such request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Reorganized Debtor or its property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Reorganized Debtor or any action by the Bankruptcy Court.

## B.     DIP Loan Claim

The DIP Loan Claim shall be Allowed in an amount equal to the amount of such DIP Loan Claim accrued or incurred as of the Effective Date, without setoff, deduction or counterclaim, subject to the provisions of the DIP Loan Order and this Plan. On the Effective Date, except to the extent that the Holder of the Allowed DIP Loan Claim agrees to a less favorable treatment, the Allowed DIP Loan Claim shall be rolled into the Exit Financing pursuant to the Exit Financing Documents to be executed between the Debtor and the DIP Lender. In accordance with the Exit Financing Documents, the DIP Lender has agreed to fund the Reorganized Debtor's ongoing post-Confirmation expenses and provide the initial funding for the Insurance Trust. The Exit Financing shall be secured by the assets of the Reorganized Debtor, and the DIP Lender shall have and retain its first priority lien and security interest in, to and against the collateral for all amounts relating to its DIP Loan Claim, including all rights granted to the DIP Lender in the DIP Loan Agreement and DIP Loan Order.

## C.     Professional Compensation Claims

1.  *Final Fee Applications and Payment of Professional Compensation Claims*

All requests for payment of Professional Compensation Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than the Professional Compensation Claim Bar Date. Objections to Professional Compensation Claims must be Filed and served on the Reorganized Debtor and the Professional to whose application the objections are addressed no later than the Professional Compensation Claim Objection Deadline. The Bankruptcy Court shall determine the Allowed amounts of such Professional Compensation Claims after notice and hearing in accordance with the procedures established by the Bankruptcy Court. Allowed Professional Compensation Claims shall be paid by the

Reorganized Debtor in Cash within ten (10) days of the entry of a Final Order allowing such Claims.

2. *Post Confirmation Fees and Expenses*

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Reorganized Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtor. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1003 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**D.** **Priority Tax Claims**

To the extent that the Holders of Allowed Priority Tax Claims have not already been paid, satisfied or otherwise released prior to the Effective Date, and except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of any in exchange for each Allowed Priority Tax Claim, shall receive from the Reorganized Debtor on the later of (i) the Effective Date; (ii) the date such Priority Tax Claim becomes an Allowed Claim; (iii) the date on which such Allowed Priority Tax Claim first becomes due and payable; or (iv) as soon thereafter as is reasonably practicable, an amount in Cash equal to the unpaid amount of such Allowed Priority Tax Claim; provided, however, that the Reorganized Debtor shall have the right to pay any Allowed Priority Tax Claim, or the remaining balance of such Claim, in full in Cash at any time on or after the Effective Date, without premium or penalty.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

**A.** **Classification in General**

Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied.

**B.**     <u>**Summary of Classification of Claims and Interests**</u>

The classification of Claims and Interests against the Debtor pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| Class 1 | Allowed Priority Non-Tax | Unimpaired | Not Entitled to Vote |
| Class 2 | Prepetition Secured Loan Claim | Unimpaired | Not Entitled to Vote |
| Class 3 | Allowed Claims of Litigation Creditors | Unimpaired | Not Entitled to Vote |
| Class 4 | Allowed Non-Southstar Warranty Claims | Unimpaired | Not Entitled to Vote |
| Class 5 | Allowed General Unsecured Claims | Unimpaired | Not Entitled to Vote |
| Class 6 | Equity Interests | Unimpaired | Not Entitled to Vote |

**C.**     <u>**Treatment of Claims and Interests**</u>

1. *Class 1* – Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Non-Tax Claim shall receive, on or after the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Priority Non-Tax Claim, (i) payment in full in Cash of its Allowed Class 1 Claim; or (ii) such other treatment as is consistent with the requirements of Bankruptcy Code section 1129(a)(9).

   Class 1 is Unimpaired under the Plan.  Holders of Allowed Claims in Class 1 are conclusively presumed to have accepted the Plan, and solicitation of acceptances with respect to such Class is not required.

2. *Class 2* – Except to the extent that the Holder of the Allowed Prepetition Secured Loan Claim agrees to a less favorable treatment, on the Effective Date, the Allowed Prepetition Secured Loan Claim shall be rolled into the Exit Financing pursuant to the Exit Financing Documents, without setoff, deduction or counterclaim.  Pursuant to the terms of the Exit Financing agreement, POC Holdings 2, Inc., as the Holder of the Allowed Prepetition Secured Loan Claim and the Allowed DIP Loan Claim, will fund the Debtor's ongoing post-Confirmation expenses and provide the initial funding for the UOB Insurance Trust. The Exit Financing shall be secured by the assets of the Debtor, and POC Holdings 2, Inc. shall have and retain its first priority lien and security interest in, to and against the collateral for all amounts relating to its Allowed Prepetition Secured Loan Claim.

   Class 2 is Unimpaired under the Plan. Holders of Allowed Claims in Class 2 are conclusively presumed to have accepted the Plan, and solicitation of acceptances with respect to such Class is not required.

14

3. *Class 3* – Class 3 shall consist of the Allowed Claims of all the Debtor's Litigation Creditors, including the Southstar Plaintiffs' and Other Defendants' Claims against the Debtor's Estate as a result of the Southstar Litigation.  On the Effective Date, except to the extent that a Holder of an Allowed Class 3 Claim agrees to a less favorable treatment, Holders of Allowed Class 3 Claims shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Class 3 Claim, an interest in the UOB Insurance Trust in accordance with the Insurance Trust Agreement.  Distributions to such Holders of Allowed Class 3 Claims shall be distributed by the Insurance Trustee in accordance with the Insurance Trust Agreement.

Class 3 is Unimpaired under the Plan.  Holders of Allowed Claims in Class 3 are conclusively presumed to have accepted the Plan, and solicitation of acceptances with respect to such Class is not required.

4. *Class 4* – On the Effective Date, except to the extent that a Holder of an Allowed Class 4 Claim agrees to a less favorable treatment, all Class 4 Claims shall be assumed by the Reorganized Debtor, and such Holders of Allowed Class 4 Claims shall receive, in full and final satisfaction, compromise, settlement, release and discharge of and in exchange for each Class 4 Claim, payment in full in Cash, without interest, of its Allowed Class 4 Claim; *provided, however,* that the Reorganized Debtor reserves the right to perform the warranty work made the basis of any Class 4 Claim.  To the extent the Reorganized Debtor, in its sole discretion, elects to perform such warranty work, the Holder of the Allowed Class 4 Claim shall not be entitled to a distribution on account of the Class 4 Claim.

Class 4 is Unimpaired under the Plan.  Holders of Allowed Claims in Class 4 are conclusively presumed to have accepted the Plan, and solicitation of acceptances with respect to such Class is not required.

5. *Class 5* – On the Effective Date, and except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Class 5 Claim, payment in full in Cash of its Allowed General Unsecured Claim.

Class 5 is Unimpaired under the Plan.  Holders of Allowed Claims in Class 5 are conclusively presumed to have accepted the Plan, and solicitation of acceptances with respect to such Class is not required.

6. *Class 6* – Holders of Equity Claims and Interests in the Debtor shall retain their equity in the Debtor.

Class 6 is Unimpaired under the Plan.  Holders of Allowed Claims in Class 6 are conclusively presumed to have accepted the Plan, and solicitation of acceptances with respect to such Class is not required.

**D.      Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights with respect to any Unimpaired Claims, including, all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

**E.      Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interests temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan.

**F.      No Voting Classes**

The Plan provides for payment in full to Holders of Allowed Claims, and each Class of Claims classified under the Plan is Unimpaired.  Pursuant to section 1126(f) of the Bankruptcy Code, a class that is not impaired under a plan, and each holder of a claim or interest within such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.  As a result, the Debtor is not soliciting acceptances of the Plan.

**G.      Controversy Concerning Impairment**

If any controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and hearing, determine such controversy in accordance with the confirmation procedures provided in the Court's *Order Granting Debtor's Expedited Motion for Entry of an Order (I) Approving Form of Mailing Materials; (II) Approving Request to Establish Estimation Procedures; and (III) Setting Scheduling Conference* [Doc. No. ___].  Failure to timely File an objection in the Bankruptcy Case shall result in such Person or Entity waiving any objection to the Impairment classifications set forth in the Plan.

**H.      Subordinated Claims**

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtor reserves the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**I.      No Waiver**

Nothing contained in the Plan shall be construed to waive the Debtor's or other Person's right to object on any basis to any Claim or Interest.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.      Corporate Existence**

Except as otherwise provided in the Plan, the Debtor shall continue to exist after the Effective Date as a separate limited liability company with all the powers of a limited liability company pursuant to the applicable law in the jurisdiction in which the Debtor is formed and pursuant to the respective by-laws (or other formation documents) in effect prior to the Effective Date, except to the extent such by-laws (or other formation documents) are amended under the Plan or otherwise.  To the extent such documents are amended, they are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, or federal law).

**B.      Reorganized Debtor**

On the Effective Date, the Reorganized Debtor shall have the authority to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan and establish the UOB Insurance Trust.

**C.      Directors and Officers of the Reorganized Debtor**

On the Effective Date, the Current Directors and Officers of the Debtor shall be established as the Directors and Officers of the Reorganized Debtor.

**D.      Vesting of Assets in the Reorganized Debtor**

On the Effective Date all property in the Estate, all Retained Causes of Action, and any property acquired by the Debtor pursuant to the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances, except those Liens granted under any agreement, instrument, or other document incorporated in the Plan, including the Exit Financing Documents, or as otherwise provided for in the Plan; *provided, however,* that as set forth in Article IV.G of the Plan, the Insurance Trust Assets shall be transferred to the Insurance Trust pursuant to the Insurance Trust Agreement.  For the avoidance of doubt, only the claims of the Debtor's Estate to the Insurance Proceeds under the Inception CIP resulting from the claims asserted and potential for liability in the Southstar Litigation are included in the Insurance Trust Assets.  All other rights, interests, or claims of the Debtor's Estate that could be asserted pursuant to any other insurance policy, CIP, or Subcontractor Default Insurance Policy shall vest in the Reorganized Debtor.

On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Retained Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**E.**     **Establishment of the UOB Insurance Trust**

On the Effective Date, the Insurance Trustee shall sign the Insurance Trust Agreement and, in his or her capacity as Insurance Trustee, accept all Insurance Trust Assets on behalf of the beneficiaries thereof, and be authorized to obtain, seek the turnover, liquidate, and collect all of the Insurance Trust Assets not in his or her possession.  The Insurance Trust will then be deemed created and effective without any further action by the Bankruptcy Court or any Person as of the Effective Date.  Thereupon, and except as expressly provided in the Plan or Insurance Trust Agreement, the Debtor shall not have any interest in or with respect to the Insurance Trust Assets. For the avoidance of doubt, the Reorganized Debtor shall be entitled to the Insurance Reimbursement Claim.

The UOB Insurance Trust shall be established for the purposes of (1) liquidating the Insurance Trust Assets; (2) prosecuting and resolving the Southstar Litigation, the Southstar Claims, and the related Coverage Litigation; (3) resolving the Other Defendants' Claims; (4) maximizing recovery of the Insurance Trust Assets for the benefit of the beneficiaries thereof; and (5) distributing the proceeds of the Insurance Trust Assets to the beneficiaries in accordance with this Plan and the Insurance Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary for, and consistent with, the litigation purposes of the Insurance Trust.

**F.**     **Appointment of Insurance Trustee**

The Insurance Trustee shall be selected by the Debtor, approved by the Bankruptcy Court, and appointed pursuant to the Confirmation Order.  Following appointment, the Insurance Trustee shall act only in accordance with the Plan and the Insurance Trust Agreement, and in such capacity shall have the same powers as the board of directors and officers of the Debtor, subject to the provisions hereof and of the Insurance Trust Agreement (and all bylaws and related corporate documents are deemed amended by this Plan to permit and authorize the same). The Insurance Trustee shall continue to perform his or her duties until all proceeds of the Insurance Trust Assets have been fully liquidated and distributed. The selection of any successor Insurance Trustee, if necessary, shall be made by the Bankruptcy Court in accordance with the Insurance Trust Agreement after notice and a hearing.

**G.**     **Vesting and Transfer of Insurance Trust Assets to the UOB Insurance Trust**

Pursuant to section 1141(b) of the Bankruptcy Code, the Insurance Trust Assets shall vest in the Insurance Trust free and clear of all liens, Claims and Interests, except as otherwise specifically provided in this Plan or in the Confirmation Order.  The Insurance Trust Assets include all of the Debtor's claims against, and interests in, the Insurance Proceeds under the Inception CIP resulting from the claims asserted and potential for liability in the Southstar Litigation.  The foregoing constitutes the only Estate asset to be included in the Insurance Trust Assets.

18

**H.**     **Insurance Trust Expenses**

Subject to the provisions of the Insurance Trust Agreement, all costs, expenses and obligations incurred by the Insurance Trustee in administering the applicable provisions of this Plan, the Insurance Trust, or in any manner connected, incidental or related thereto, in effecting distributions from the Insurance Trust shall be a charge against the Insurance Trust Assets remaining from time to time in the hands of the Insurance Trustee.  Such expenses shall be paid in accordance with the provisions of this Plan and the Insurance Trust Agreement.

**I.**     **Beneficiaries of the Insurance Trust and Priority of Distributions**

The UOB Insurance Trust shall be a waterfall trust.  Except as provided in the Plan and Insurance Trust Agreement with respect to repayment of the Exit Financing and Insurance Reimbursement Claim, Holders of Allowed Class 3 Claims entitled to distributions shall be the only beneficiaries of the Insurance Trust.  Such beneficiaries shall be bound by the Insurance Trust Agreement.  The interests of the beneficiaries in the Insurance Trust shall be uncertificated and nontransferable.  Distributions from the Insurance Trust shall be made in accordance with the following priorities: (i) payment of the reimbursable expenses of the Insurance Trustee, (ii) repayment of the funding for the UOB Insurance Trust provided by POC Holdings 2, Inc., (iii) payment of Allowed Class 3 Claims, and (iv) payment of the Insurance Reimbursement Claim.

**J.**     **Preservation of Right to Conduct Investigations**

The preservation for the Insurance Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Insurance Trust Assets.  Accordingly, the Insurance Trustee shall have the same rights as the Debtor to conduct investigations pursuant to Bankruptcy Rule 2004 as those held by the Debtor prior to the Effective Date. Such powers to investigation pursuant to Bankruptcy Rule 2004 shall vest with the Insurance Trustee and shall continue until dissolution of the Insurance Trust.

**K.**     **Federal Income Tax Treatment of Insurance Trust for the Insurance Trust Assets**

For federal income tax purposes, it is intended that the Insurance Trust be classified as a liquidating trust under section 301.7701-4 of the Treasury regulations and that such trust be owned by its beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution from the Debtor's Estate of an undivided interest in each of the Insurance Trust Assets (to the extent of the value of their respective share in the applicable assets) and then contributed such interests to the Insurance Trust, and the Insurance Trust's beneficiaries will be treated as grantors and owners thereof.

**L.**     **Termination of the Insurance Trust**

The Insurance Trust shall terminate upon the date on which all of the Insurance Trust Assets are liquidated in accordance with the Plan, the Insurance Proceeds have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been

filed with the appropriate state or federal regulatory authorities, and the order closing the Bankruptcy Case is a Final Order.

**M.      Corporate Action of the Debtor**

On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including (1) the execution of the Insurance Trust Agreement and transfer of the Insurance Trust Assets to the Insurance Trust; (2) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (3) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Plan (whether to occur before, on, or after the Effective Date).

All matters provided for in the Plan involving the corporate structure of the Debtor or the Reorganized Debtor, and any corporate action required by the Debtor or the Reorganized Debtor, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by security holders, directors, or officers of the Debtor or the Reorganized Debtor, as applicable.  On or prior to the Effective Date, the Directors and Officers of the Debtor shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtor.  The authorizations and approvals contemplated by Article IV of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

**N.      Effectuating Documents; Further Transactions**

Except as otherwise provided for in the Plan with respect to Secured Claims arising under the DIP Loan Agreement or the Prepetition Secured Loan, on and after the Effective Date, the Reorganized Debtor, and the Directors and Officers, are authorized to and may issue, execute, deliver, File, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization, or consents, except for those expressly required pursuant to the Plan.

**O.      Retained Causes of Action**

Except as otherwise provided in the Plan, Plan Documents, Insurance Trust Agreement, or in any other contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with Bankruptcy Code section 1123(b)(3), the Reorganized Debtor shall retain and shall have the exclusive right, authority, and discretion to (without further order of the Bankruptcy Court) determine and to initiate, File, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any and all Retained Causes of Action that the Debtor or the Estate may hold against any Entity, whether arising before or after the Petition Date.  The Debtor reserves and shall retain the foregoing Retained Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Bankruptcy Case.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACS AND UNEXPIRED LEASES

### A.     Assumption and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, except as otherwise provided in the Plan or Plan Documents, all Executory Contracts or Unexpired Leases that currently exist between the Debtor and another Person or Entity, and are not listed on the Schedule of Rejected Contracts, shall be deemed assumed by the Debtor with a cure amount of zero dollars ($0.00) unless they (i) were previously assumed or rejected by the Debtor; or (2) are subject to a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of the Executory Contracts and Unexpired Leases set forth in the Schedule of Rejected Contracts and Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.  Each Executory Contract and Unexpired Lease assumed pursuant to Article V.A of the Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.  Notwithstanding anything to the contrary in the Plan, the Debtor or the Reorganized Debtor, as applicable, reserves the right to alter, amend, modify, or supplement the Schedules identified in the Plan at any time through and including sixty (60) days after the Effective Date.

### B.     Indemnification Obligations

All indemnification provisions, consistent with applicable law, currently in place (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the Current Directors and Officer, managers, employees, attorneys, accountants, investment bankers, and other Professionals of the Debtor, as applicable, shall be reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such Current Directors and Officers, managers, employees, attorneys, accountants, investment bankers, and other Professionals of the Debtor than the indemnification provisions in place prior to the Effective Date.

### C.     Claims Based on Rejection of Executory Contracts or Unexpired Leases

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim, with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the later of (1) the date of entry of any order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, (3) the Effective Date, or (4) the date after the Effective Date that the applicable

Schedules are altered, amended, modified, or supplemented, but only with respect to any Executory Contract or Unexpired Lease thereby affected. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor or the Reorganized Debtor, the Estate, or their property without the need for any objection by the Reorganized Debtor or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.C.5 hereof.

**D.**      **Cure of Defaults for Executory Contracts and Unexpired Leases Assumed**

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. The Debtor shall provide for notices of proposed assumption and proposed cure amounts and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

**E.**      **Preexisting Obligations to the Debtor under Executory Contracts and Unexpired Leases**

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtor or the Reorganized Debtor, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtor expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously

purchased by the Debtor contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

**F.     Modifications, Amendments, Supplements, Restatements, or Other Agreements**

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

**G.     Reservation of Rights**

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Contracts and Leases, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or Reorganized Debtor, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan.

**H.     Nonoccurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**I.     Contracts and Leases Entered Into After the Petition Date**

Contracts and leases entered into after the Petition Date, if any, including any Executory Contract and Unexpired Leases assumed by the Debtor during the Bankruptcy Case, will be performed by the Debtor in the ordinary course of business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.     Timing and Calculation of Distributions**

As soon as reasonably practicable (as determined by the Debtor) after the Effective Date, in accordance with Articles II and III hereof, the Reorganized Debtor shall make distributions to Holders of Allowed Administrative Expense Claims (including Allowed Professional Compensation Claims), Allowed Priority Non-Tax Claims in Class 1, Allowed Non-Southstar Warranty Claims in Class 4, and Allowed General Unsecured Claims in Class 5.

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest), each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class.  In the event that any payment or act under the Plan is required to made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VI.E of the Plan.  Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

**B.**     **Rights and Powers of the Reorganized Debtor to Make Distributions**

Subject to Article IV of the Plan, all distributions under the Plan, except those from the Insurance Trust, shall be made by the Reorganized Debtor.  The Reorganized Debtor shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

The Reorganized Debtor shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; and (c) exercise such powers as may be vested in the Reorganized Debtor by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Reorganized Debtor to be necessary and proper to implement the provisions hereof.

**C.**     **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

1.     *Record Date for Distribution*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtor or its respective agents shall be closed, and the Debtor or its respective agents shall not be required to make any further changes in the record holders of any of the Claims or Interests.  The Debtor shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.  The Debtor shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

2.     *Delivery of Distributions in General*

Except as otherwise provided herein, the Debtor shall make distributions to Holders of Allowed Claims and Allowed Interests (as applicable) as of the Distribution Record Date at the address for each such Holder as indicated on the Debtor's records as of the date of any such distribution: *provided, however*, that the manner of such distributions shall be determined at the

24

discretion of the Reorganized Debtor; *provided further, however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

3.    *Minimum Distributions*

To the extent Cash is distributed under the Plan, no Cash payment of less than $50.00 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim, and such amounts shall be retained by the Reorganized Debtor.

4.    *Undeliverable Distributions and Unclaimed Property*

In the event that any distribution to any Holder of Allowed Claims or Allowed Interests (as applicable) is returned as undeliverable, no distribution to such Holder shall be made unless and until the Debtor has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided, however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtor automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims and Interests to such property or Interest in property shall be discharged and forever barred.

**D.    Manner of Payment**

1.    All distributions of Cash to the Holders of Allowed Claims under the Plan shall be made by the Reorganized Debtor on behalf of the Debtor.

2.    At the option of the Reorganized Debtor, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

**E.    Distributions to Holders of Disputed Claims**

Except as otherwise provided in the Plan or Litigation Trust Agreement, distributions on account of Disputed Claims shall be withheld by the Debtor until such Claims have been either Allowed or Disallowed.  To the extent a Disputed Claim becomes Allowed the distribution reserved for such Claim shall be distributed to the Holder thereof.  To the extent a Disputed Claim becomes Disallowed, the distribution reserved for such Claim shall revert to the Reorganized Debtor automatically and without need for a further order by the Bankruptcy Court

**F.    Compliance with Tax Requirements**

In connection with the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the

contrary, the Reorganized Debtor shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms it believes are reasonable and appropriate. The Reorganized Debtor reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

## G.    **Allocations**

Distributions with respect to Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

## H.    **No Post-Petition Interest on Claims**

Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, post-petition interest shall not accrue or be paid on any prepetition Claims against the Debtor, and no Holder of a prepetition Claim against the Debtor shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

## I.    **Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Petition Date.

## J.    **Setoffs and Recoupment**

Except as expressly provided in the Plan, the Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Reorganized Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount by the Reorganized Debtor and Holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided, however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or its successor may possess against the applicable Holder. In no event shall any Holder of Claims against, or Interests in, the Debtor be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such Holder has actually performed such recoupment and provided notice thereof in writing to the Debtor in accordance with Article XII.F of the Plan on or before the

Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**K.      Claims Paid or Payable by Third Parties**

1.    *Claims Paid by Third Parties*

The Debtor or the Reorganized Debtor, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor or Reorganized Debtor.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor or Reorganized Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.    *Claims Payable by Third Parties*

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    *Applicability of Insurance Policies*

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

# ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

**A.**     <u>**Claims Administration Responsibilities**</u>

Except as otherwise specifically provided in the Plan or Insurance Trust Agreement, after the Effective Date, the Reorganized Debtor, with respect to all Claims and Interests in Classes 1, 2, 4, 5, and 6, shall have the authority to: (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. After the Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses the Debtor had with respect to any Interests or Claims, other than General Unsecured Claims, immediately prior to the Effective Date.

Except as otherwise specifically provided in the Plan or Insurance Trust Agreement (including, for the avoidance of doubt, Article VII.B. of the Plan), after the Effective Date, the Insurance Trustee, with respect to all Claims in Class 3, shall have authority to: (1) File, withdraw, or litigate to judgment, objections to Claims; (2) settle or compromise any Class 3 Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. After the Effective Date, the Insurance Trustee shall have and retain any and all rights and defenses the Debtor had with respect to any Class 3 Claim immediately prior to the Effective Date.

**B.**     <u>**Estimation of Claims and Interests**</u>

1.    *In General*

Before or after the Effective Date, the Debtor may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Disputed Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim or Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

2.   *Southstar Plaintiffs' Claims*

Prior to the Confirmation Hearing, the Debtor shall File a motion with the Bankruptcy Court requesting that the Class 3 Claims of the Southstar Plaintiffs be estimated in order to establish (i) the amount of the Claims; (ii) feasibility of the Plan; and (iii) the Impaired or Unimpaired status of the Southstar Plaintiffs' Claims. Once estimated by the Bankruptcy Court, the Southstar Plaintiffs' Claims shall become Allowed Class 3 Claims and fixed in the amount ordered by the Bankruptcy Court for purposes of receiving distributions from the Insurance Trust.

**C.      Adjustment to Claims or Interests Without Objection**

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtor without any further notice to or action, order, or approval of the Bankruptcy Court.

**D.      Time to File Objections to Claims**

Except as otherwise specifically provided in the Plan, any objections to Claims shall be Filed on or before the later of: (i) one hundred eighty (180) days after the Effective Date, or (ii) such other period of limitation as may be specifically fixed by a Final Order of the Bankruptcy Court for objecting to such Claims.

**E.      Disallowance of Claims or Interests**

Except as otherwise specifically provided in the Plan, any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as any objection to those Claims or Interests have been settled or a Bankruptcy Court order with respect thereto has been entered.

Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.

**F.      Amendments to Claims or Interests**

On or after the Effective Date, a Claim or Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtor and any such new or amended Claim or Interest Filed shall be deemed disallowed in full and expunged without any further action.

G.      **No Distributions Pending Allowance**

        If any objection to a Claim or Interest or portion thereof is Filed as set forth in Article VII.D hereof, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest or portion thereof unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

H.      **Distributions After Allowance**

        To the extent that a Disputed Claim ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Debtor shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

 A.      **Release of Debtor**

        Pursuant to Bankruptcy Code section 1141(d), and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided for in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests related to services performed by employees of the Debtor prior to the Effective Date and that arise from a termination of warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; or (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

B.      **Release of Liens**

        Except as otherwise provided in the Plan, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim,

satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Secured Claims that the Debtor elects to Reinstate in accordance with Article III.C.2 hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.  On and after the Effective Date, any Holder of such Secured Claim (and the applicable agents for such Holder), at the expense of the Reorganized Debtor, shall be authorized and directed to release any collateral or other property of either Debtor (including any Cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtor to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or Filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## C.  Releases by the Debtor

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtor, the Reorganized Debtor, and its Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtor, that the Debtor, the Reorganized Debtor, or its Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's in- or out-of-court restructuring efforts, the Bankruptcy Case, the Plan, the Insurance Trust, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Insurance Trust Agreement, the Filing of the Bankruptcy Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan or the Insurance Trust Agreement.

## D.  Releases by Holders of Claims and Interests

As of the Effective Date, each Releasing Party is deemed to have released and discharged the Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, whether known or unknown, including derivative claims, asserted on behalf of the Debtor, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's in- or out-of-court restructuring efforts, the Bankruptcy Case, the formulation, preparation dissemination, negotiation, or Filing of the Plan, the Insurance Trust Agreement, or the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the

distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.

E.     **Exculpation**

The Exculpated Parties shall not have or incur any liability to any Holder of a Claim or Interest, for any act, event, or omission from the Petition Date to the Effective Date in connection with or arising out of the Bankruptcy Case, the Confirmation of the Plan, the Consummation of the Plan, the administration of the Plan, the Insurance Trust, or the assets and property to be distributed pursuant to the Plan or Insurance Trust (including unclaimed property under the Plan), unless such Entity's action is determined as (i) bad faith; (ii) actual fraud; (iii) willful misconduct; or (iv) gross negligence, in each case by a Final Order of a court of competent jurisdiction.  Each Entity may reasonably rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtor.

F.     **Injunction**

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been satisfied, released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of, in connection with, or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner  any action or other proceeding of any kind on account of, in connection with, or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Upon Confirmation of the Plan, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of any Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in the Plan.

**G.     Channeling Injunction**

1.   *In General*

Upon Confirmation of the Plan, all Holders of Claims and Interests having an Allowed Claim herein shall be temporarily enjoined, pursuant to section 105 of the Bankruptcy Code, from proceeding against any other obligor or guarantor on that debt for the collection of all or any portion of their Allowed Claim.  Such injunction shall remain in effect only for so long as the Reorganized Debtor complies with the terms of the Plan.  Any violation of the Plan that remains uncured for thirty (30) days after receipt by the Reorganized Debtor of written notice from any party affected by such violation shall, without order of the Bankruptcy Court, automatically result in the dissolution of the injunction granted hereunder as to the affected party.

2.   *Class 3 Claims*

In addition, Holders of Allowed Class 3 Claims shall be enjoined from commencing or continuing in any manner any action or other proceeding of any kind, including claims under an alter ego theory of liability, against a non-Debtor party on account of, or in connection with, or with respect to any such Class 3 Claims unless the distributions from the Insurance Trust are insufficient to pay the Allowed Class 3 Claims in full.  Following the distributions from the Insurance Trust to the Holders of Allowed Class 3 Claims in accordance with the Litigation Trust Agreement, the channeling injunction provided for in this section shall terminate.

**H.     Protections Against Discriminatory Treatment**

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor, or another Entity with whom the Reorganized Debtor has been associated, solely because the Reorganized Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Bankruptcy Case (or during the Bankruptcy Case but before the Debtor is granted or denied a discharge), or has not paid a debt that is dischargeable in the Bankruptcy Case.

**I.     Reimbursement or Contribution**

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim is no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**A.**      <u>**Conditions Precedent to Confirmation**</u>

The following are conditions precedent to Confirmation of the Plan that shall be satisfied or waived in writing in accordance with Article IX.C of the Plan:

1. The Plan and Confirmation Order shall be in form and substance acceptable to the Debtor.

**B.**      <u>**Conditions Precedent to Effectiveness**</u>

1. The Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Debtor and shall not (a) have been reversed or vacated, (b) be subject to a then-effective stay, or (c) have been modified or amended;

2. The Plan, including any amendments, modifications, or supplements thereto, and inclusive of any amendments, modifications, or supplements made after the Confirmation Date but before the Effective Date, shall be in form and substance acceptable to the Debtor;

3. The Insurance Trust Agreement shall be in form and substance acceptable to the Debtor; and

4. The Bankruptcy Court shall have estimated the Class 3 Claims, including those of the Southstar Plaintiffs, to determine that the Claims of the Litigation Creditors do not exceed the available coverage under the Inception CIP.

**C.**      <u>**Waiver of Conditions**</u>

The conditions to Confirmation and the Effective Date set forth in this Article IX may be waived only with the prior written consent of the Debtor without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

**D.**      <u>**Effect of Failure of Conditions**</u>

If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (1) constitute a waiver or release of Claims by the Debtor, Claims, or Interests; (2) prejudice in any manner the rights of the Debtor, any Holders of Claims or Interests, or any other Person or Entity; or (3) constitute an admission, acknowledgement, offer, or undertaking by the Debtor, any Holders of Claims or Interests, or any other Person or Entity.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

**A.     Modifications and Amendments**

Except as otherwise specifically provided in the Plan, the Debtor reserves the right to modify the Plan whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code.  Subject to those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, the Debtor expressly reserves its rights to revoke or withdraw, or, to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

**B.     Effect of Confirmation on Modifications**

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan made pursuant Article X.A., above, are approved pursuant to Bankruptcy Code section 1127(a) and do not require additional disclosure under Bankruptcy Rule 3019.

**C.     Revocation or Withdrawal of Plan**

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts and Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Person or Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Bankruptcy Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any requests for payment of any Administrative Claim and the resolution of any objections to

the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2. Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtor amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, the Schedules of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4. Ensure that distributions to Holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan and Insurance Trust Agreement;

5. Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

6. Adjudicate, decide, or resolve all matters related to section 1141 of the Bankruptcy Code;

7. Enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan, the Insurance Trust Agreement, and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

8. Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9. Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Person or Entity with respect to Consummation or enforcement of the Plan;

11. Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII hereof and enter such orders as may be necessary to implement such releases, injunctions and other provisions;

12. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the

36

Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.L hereof;

13. Enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. Determine any other matters that may arise in connection with or related to the Plan, the Insurance Trust Agreement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

15. Enter an order concluding or closing the Bankruptcy Case;

16. Adjudicate any and all disputes arising from or relating to distributions under the Plan;

17. Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Court order, including the Confirmation Order;

18. Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 363, 505, and 1146 of the Bankruptcy Code;

21. Hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan, including under Article VIII hereof, regardless of whether such termination occurred prior to or after the Effective Date;

22. Enforce all orders previously entered by the Bankruptcy Court; and

23. Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A.     Immediate Binding Effect

Subject to Article IX hereof, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon: (1) the Debtor's Estate, (2) the Reorganized Debtor, (3) all Holders of Claims or Interests (irrespective of whether such Claim or Interest Holders are deemed to have accepted the Plan), (4) all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, (5) each Entity acquiring property under the Plan or Insurance Trust Agreement, and (6) any

and all non-Debtor parties to Executory Contracts and Unexpired Leases.

**B.**      **Additional Documents**

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan, including the Insurance Trust Agreement.  The Debtor or the Reorganized Debtor, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and Insurance Trust Agreement and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**C.**      **Payment of Statutory Fees**

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by the Reorganized Debtor for each quarter (including any fraction thereof) until the Bankruptcy Case is converted, dismissed, or closed - whichever occurs first.

**D.**      **Reservation of Rights**

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of an action by the Debtor with respect to the Plan, or the Insurance Trust Agreement shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

**E.**      **Successors & Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**F.**      **Notices**

All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including any facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

OKIN ADAMS LLP
Matthew S. Okin
David L. Curry, Jr.
Ryan A. O'Connor
1113 Vine St., Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 888.865.2118
mokin@okinadams.com
dcurry@okinadams.com
roconnor@okinadams.com

**G.      Term of Injunctions or Stays**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Bankruptcy Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**H.      Entire Agreement**

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Documents) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which are deemed merged and integrated into the Plan.

**I.      Exhibits**

All Exhibits and documents attached to the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the Exhibits and documents are Filed, copies of such Exhibits and documents shall be available upon written request to the Debtor's counsel at the address above or by downloading such Exhibits and documents from the Courts CM/ECF filing system. To the extent any Exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

**J.      Nonseverability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order

shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's consent; (3) nonseverable and mutually dependent.

**K.    Plan Proposed in Good Faith**

Upon entry of the Confirmation Order, the Debtor will be deemed to have proposed the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and each of its Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such individuals or Entities or the Reorganized Debtor will have any liability for the violation of any applicable law, rule, or regulation governing the proposal of the Plan or participation in the Bankruptcy Case.

**L.    Closing the Bankruptcy Case**

The Reorganized Debtor shall, promptly after the administration of the Bankruptcy Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Bankruptcy Case.

**M.    Waiver or Estoppel**

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any arguments, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor, or its counsel, or any other Entity, if such agreement was not disclosed in the Plan or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

**N.    Controlling Document**

In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

Respectfully submitted on the 26th day of February, 2019.

**DEBTOR URBAN OAKS BUILDERS LLC**

By:     */s/ Todd Hagood*
        Todd Hagood
        Vice President of Construction

**OKIN ADAMS LLP**

By:     */s/ Matthew S. Okin*
        Matthew S. Okin
        Texas Bar No. 00784695
        mokin@okinadams.com
        David L. Curry, Jr.
        Texas Bar No. 24065107
        dcurry@okinadams.com
        Ryan A. O'Connor
        Texas Bar No. 24098190
        roconnor@okinadams.com
        1113 Vine St., Suite 240
        Houston, Texas 77002
        Tel: 713.228.4100
        Fax: 888.865.2118

**ATTORNEYS FOR THE DEBTOR**

41